448-07PJG/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NOVOROSSIYSK SHIPPING COMPANY,

          Plaintiff,

07 Civ. 8017 (PAC)

-against-

**VERIFIED COMPLAINT**

SUN ENERGY TRADING LTD.,

          Defendant.
-----------------------------------------------------------x

Plaintiff, NOVOROSSIYSK SHIPPING COMPANY (hereinafter "NOVOROSSIYSK") for its Verified Complaint against Defendant SUN ENERGY TRADING LTD. (hereinafter "SUN ENERGY"), alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

2. At all times material hereto, Plaintiff NOVOROSSIYSK was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Novorossiysk 1, Ul. Svobody, Novorossiysk, 353900, Russia.

3. At all times relevant hereto, Defendant SUN ENERGY was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at P.O. Box 3159, Road Town, Tortola, British Virgin Islands.

4. Defendant SUN ENERGY utilizes other entities as paying or funding agents for purposes of receiving, holding and/or transferring funds, including but not limited to Quijano Associates BVI Ltd. which entity is used to hold, transfer, receive and/or is in possession of assets of Defendant SUN ENERGY.

5. On or about January 25, 2007, Plaintiff NOVOROSSIYSK, in the capacity as owner of the M/T LEONID UTESOV, entered into a maritime contract of charter party with Defendant SUN ENERGY, as charterer, for the carriage of a cargo gas oil and/or kerosene oil. A copy of the charter party is annexed as Exhibit A.

6. Plaintiff NOVOROSSIYSK duly tendered the vessel into service under the charter, the voyage was performed and demurrage earned.

7. Plaintiff NOVOROSSIYSK submitted an invoice for the demurrage due under the charter party in the amount of $74,939.83. A true and correct copy of the demurrage invoice is attached hereto as Exhibit B.

8. In breach of the terms of the charter party, and despite due demand SUN ENERGY has refused and/or otherwise failed to pay the amounts due and outstanding under the charter party, and the entire amount of $74,939.83 remains due and owing.

9. The charter party provides for the application of English law and all disputes between the parties are to be resolved by the High Court of Justice in London, and NOVOROSSIYSK specifically reserves its right to proceed in that forum.

10. This action is brought to obtain jurisdiction over SUN ENERGY and to obtain security in favor of Plaintiff NOVOROSSIYSK in respect to its claims against SUN ENERGY and in aid of London proceedings.

11. Under English law, costs including attorney fees, disbursements and interest are recoverable as part of Plaintiff's claim.

12. This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the London proceedings and interest, all of which are recoverable as part of Plaintiff's claim under English law.

13. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London will be $20,000 and interest on its damages are estimated to be $11,157.18 (calculated at the rate of 7% for a period of two years, the estimated time for completion of the proceedings in London).

**Request for Rule B Relief**

14. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name and/or in the name of its paying and/or funding agent Quijano Associates BVI Ltd. at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

15. The total amount to be attached pursuant to the calculations set forth above is $106,097.01.

WHEREFORE, Plaintiff NOVOROSSIYSK SHIPPING COMPANY prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$106,097.01** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its name or as may be held, received or transferred for its benefit, including those in the name of its paying and/or funding agent Quijano Associates BVI Ltd. at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any judgment entered against the Defendant in the London proceedings; and

    d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       September 12, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff NOVOROSSIYSK SHIPPING COMPANY

By: _____
    Peter J. Gutowski (PG 2200)
    Pamela L. Schultz (PS 8675)
    80 Pine Street
    New York, NY 10005
    (212) 425-1900

## ATTORNEY VERIFICATION

State of New York   )
                    ) ss.:
County of New York  )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1.  I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.  The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.  The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Peter J. Gutowski

Sworn to before me this
12 day of September 2007

_____
Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

ORIGINAL

**BP SHIPPING LTD.**
Britannic Tower
Moor Lane
LONDON EC2Y 9BU

Code word for this Charterparty
BEEPEEVOY3"



# Voyage Charterparty

| | |
|---|---|
| ~~LONDON~~ Espoo  25th January ........................ ~~19~~ 2007... | 1 |
| It is this day agreed between Messrs. NOVOROSSIYSK SHIPPING COMPANY.... | 2 |
| of .................................................................................................................................................. | 3 |
| .................................................................................................................................................. | 4 |
| Owners (hereinafter referred to as 'Owners') of the good motor/~~steam~~ tank vessel called | 5 |
| M/T "LEONID UTESOV"........................................................................................... | 6 |
| (hereinafter referred to as 'the Vessel') now open Thames 25th January p.m., ETA Fallion 30th January p.m. WSNP | 7 |
| ...... ......  ............and expected ready to load about ..................................................... | 8 |
| and ~~BP Shipping Limited~~ ~~of London as agents for~~ ............................................... | 9 |
| Messrs. SUN ENERGY TRADING LTD. of British Virgin Islands............................... | 10 |
| (hereinafter referred to as 'Charterers') | 11 |

| | | |
|---|---|---|
| Classification of Vessel | 1. Owners undertake that: | 12 |
| | (a) the Vessel is classed  P & I Club West of England | 13 |
| | See additional clause 1 | |
| Description of Vessel | (b) the Vessel has a summer deadweight of .   .................................... tonnes | 14 |
| | on a saltwater draught of ............ metres, with a total cargo capacity (98% | 15 |
| | full) of ........................................................................................ cubic metres; | 16 |
| | (c) the Vessel is fully fitted with heating coils fabricated from ............................ | 17 |
| | in all cargo tanks, capable of heating the cargo to, and maintaining it at all times at a temperature of, | 18 |
| | 57deg C (135deg F); | 19 |
| | (d) the Vessel is equipped with derricks capable of lifting to, and supporting at, the Vessel's port and | 20 |
| | starboard manifolds submarine hoses of up to ........................... tonnes in weight. | 21 |
| Condition of Vessel | 2. Owners shall before, at the commencement of, and throughout the voyage exercise due diligence to | 22 |
| | make and maintain the Vessel, her tanks, pumps, valves and pipelines tight, staunch, strong, in good order | 23 |
| | and condition, in every way fit for the voyage and fit to carry the cargo provided for in Clause 3, with the | 24 |
| | Vessel's machinery, boilers and hull in a fully efficient state, and with a full and efficient complement of | 25 |
| | Master, officers and crew. | 26 |

*1*



| | | |
|---|---|---|
| Loading and Discharge Ports Range | 3. Subject to the provisions of Clause 24, the Vessel shall proceed to 1 safe port TALLINN, Charterers have the option to load in 2 safe ports Tallinn against payment of D A in second port. Time to start to count in the first load port as per Charter Party terms and conditions and to continue to count until hoses disconnection in second load port........................................................................................................................ | 27 28 29 30 |
| Cargo | or so near thereunto as she may safely reach, and there load up to full a cargo of GASOIL and/or KERO, clean, unleaded, undarker 2.5 NPA, 1-2 grades within vessel's natural segregation, no deadfreight for Charterers' account provided minimum quantity supplied. Master advised that vessel is able to do the following double valve segregations 1) 4,400 metric tons Gasoil and 11,480 metric tons Kero. Total 15,880 metric tons. | 31 32 33 34 35 36 |

   Fore 9.26 m, mid 9.26 m, aft 9.26 m SWSD

2) 4,400 metric tons Gasoil and 11,383 metric tons Kero. Total 15,783 metric tons.

   Fore 9.10 m, mid 9.16 m, aft 9.40m FWSD 1.6

   Fore 9.11 m, mid 9.19 m aft 9.24 m SWSD

3) 1,680 metric tons Gasoil and 10,000 metric tons Kero. Total 11,680 metric tons

   Fore 8.80 m, mid 8.80 m, aft 8.80 m SWSD

   Fore 8.90 m, mid 8.95 m, aft 8.95 m FWSD

4) 1,168 metric tons Gasoil and 9,000 metric tons Kero. Total 11,168 metric tons

   Fore 8.36 m, mid 8.36 m, aft 8.36 m SWSD

   Fore 8.60 m, mid 8.56 m, aft 8.50 m FWSD ........................................................in bulk,   37

not exceeding what she can reasonably stow and carry over and above the tackle, provisions and furniture,   38

and in any case not in excess of the quantity permitted by the International Load Line Convention, 1966, or   39

any modification or amendment thereof as may be applicable to the voyage to be performed under this   40

Charter. Thereupon the Vessel shall proceed with such cargo at a speed which Owners undertake shall be   41

............................. knots ('Base Speed'), as ordered on signing Bills of Lading or as provided in Clauses   42

24 and/or 26 to 1 safe port AMSTERDAM, ROTTERDAM or ANTWERP or.................................   43

1-2 safe port(s) WEST COAST UNITED KINGDOM including Eire ..........................   44

...................................................................................................................................   45

...................................................................................................................................   46

...................................................................................................................................   47

...................................................................................................................................   48

.................................................................... or so near thereunto as she may safely reach,   49

and deliver the same in consideration of the payment of freight as provided in Clauses 6 and 7.   50

~~Charterers shall have the right at any time during the voyage to order the Vessel to increase speed in order~~   51
~~to arrive at a port or place on a certain date. Charterers shall not instruct the Vessel to increase speed such~~   52
~~as to require the Vessel to proceed at a maximum speed in excess of that set out in the BP Shipping~~   53
~~Questionnaire. If Charterers require any increase of speed to be made, any increase in the freight rate~~   54
~~consequent thereon shall be calculated in accordance with the provisions of Clause 6.~~   55

~~If the Vessel fails to maintain Base Speed, or fails to comply with instructions as to the increase of speed~~   56
~~given by Charterers pursuant to this Clause, Owners shall, subject to Clause 46, be liable for all costs,~~   57
~~losses, damages and expenses arising as a direct consequence thereof save to the extent that Owners can~~   58
~~prove to the satisfaction of Charterers that such failure was attributable to a reduction in speed necessi-~~   59
~~tated by either adverse weather and sea state conditions or the safe navigation of the Vessel and Charterers~~   60
~~shall be entitled to deduct any such costs, losses, damages and expenses from any demurrage due to Owners~~   61
~~hereunder without prejudice to any other rights available to Charterers under this Charter or otherwise~~   62
~~under English Law.~~ Vessel to proceed on laden voyage at 12.0 knots with safe navigation permitting.   63

Loading/ Discharge Place    4. The Vessel shall be loaded and discharged at any port, berth, dock, anchorage, submarine line,   64

|  |  |  |
|---|---|---|
|  | single point or single berth mooring facility, offshore location, alongside vessels or lighters, or any other | 65 |
|  | place whatsoever as ordered by Charterers. Charterers shall exercise due diligence before directing the | 66 |
|  | Vessel to any such places to ascertain that the Vessel can always lie safely afloat, but Charterers do not | 67 |
|  | warrant the safety of any of the aforementioned places and shall be under no liability in respect thereof | 68 |
|  | except for loss or damage caused by the failure to exercise due diligence as aforesaid. | 69 |

**Lightening at Sea**

If a port is nominated which cannot accommodate the Vessel with the quantity of cargo carried, Charterers undertake to discharge sufficient cargo at a previous port or place, or into vessels or lighters, to enable the Vessel to enter and lie at such nominated port or place. Freight shall be paid in accordance with Clause 6 and lighterage shall be at the expense of Charterers. (70–73)

A place of lightening at sea shall not constitute a discharge port or place under Clause 19, unless so defined by Worldscale Association or other authority having jurisdiction, but all time used for a lightening operation (excluding any time lost or spent by reason of any of the causes stipulated in Clauses 20 and 21) shall count against the number of running hours stipulated in Clause 18 for the purpose of calculating Charterers' liability, if any, for demurrage as provided in Clause 22. For the purpose of this Clause the lightening operation shall be deemed to commence when the Vessel is properly tied up and moored alongside the lightening vessel and to end when unmooring has been completed. (74–79)

Subject to the preceding paragraph of this Clause, any additional steaming and/or waiting time used solely by reason of Charterers' orders to lighten at sea shall count as laytime or, if the Vessel is on demurrage, as demurrage. (80–82)

**Ship to Ship Transfer Operations**

If Charterers require the Vessel to trans-ship cargo from or into another ocean-going vessel the trans-shipment operation shall be carried out in accordance with the recommendations set out in the latest edition of the ICS/OCIMF Ship to Ship Transfer Guide (Petroleum) and Owners undertake that the Vessel and her crew will comply with such recommendations. Charterers shall provide and pay for all necessary equipment including suitable fenders and hoses. Owners shall permit supervisory personnel nominated by Charterers to attend on board, including a Mooring Master, to assist in the trans-shipment operation. In the case of a ship to ship transfer freight shall be paid in accordance with the provisions of Clause 6. (83–89)

No provision herein contained as to laytime and demurrage shall be affected by the provisions of Clause 46. Any ship to ship operation, including barges, then all time to count in full weather permitting or not, and time to count from arrival at ship to ship location, till completion of unmooring. (90)

**Shifting**

5. Charterers may require the Vessel to load at more than one berth at each loading port or place and to discharge at more than one berth at each discharge port or place in which event Owners shall, in the first instance, pay expenses arising from any of the following movements of the Vessel:- (91–93)

(a) unmooring at, and pilotage and towage off, the first loading or discharge berth; (94)

(b) mooring and unmooring at, and pilotage and towage on to and off, the intermediate loading or discharge berths; and (95–96)

(c) mooring at, and pilotage and towage on to, the last loading or discharge berth. (97)

Charterers shall reimburse Owners in respect of expenses properly incurred arising from any of the afore-mentioned movements upon presentation by Owners of all supporting invoices evidencing prior payment by Owners. (98–100)

3

|  |  |  |
|---|---|---|
| | Charterers shall reimburse Owners in respect of any dues and/or other charges incurred in excess of those | 101 |
| | which would have been incurred if all the cargo involved at the particular port or place had been loaded or | 102 |
| | discharged at the first berth only. Time consumed on account of shifting shall count as laytime or, if the | 103 |
| | Vessel is on demurrage, as demurrage, except as otherwise provided in Clause 20. | 104 |
| Port and Terminal Combinations | For the purpose of freight payment, the places grouped in Port and Terminal Combinations in the New Worldwide Tanker Nominal Freight Scale (hereinafter referred to as 'Worldscale'), as amended at the date of this Charter, shall be considered as berths within a single port, Charterers reimbursing shifting expenses in accordance with the foregoing provisions. | 105–108 |
| Rate of Freight | 6. The rate of Freight shall be at the level of…… | 109 |

Lump sum USD 192,500 basis 1:1 discharge Amsterdam or Rotterdam………… 110
Lump sum USD 202,500 basis 1:1 discharge Antwerp ………… 111
WS 220 if discharge West Coast United Kingdom Fire on min 15,500 metric tons irrespective of quantity loaded 112

………………………………………………………… % of the rate for the voyage 115
as provided in Worldscale, as amended at the date of this Charter. ~~If Charterers order the Vessel to~~ 116
~~increase speed under the provisions of Clause 3 such rate shall be increased by ………………~~ 117
~~Worldscale points for each knot of increased speed above the Base Speed or on a pro rata basis for fractions~~ 118
~~of a knot up to a maximum of ……………… knots. Such increase shall be calculated in accordance~~ 119
~~with the following example:~~ 120

~~Example: The Vessel proceeds at Base Speed of 10 knots, the rate for which is Worldscale 40.~~ 121
~~After 10 days the Vessel is ordered to complete the voyage at 12 knots. The remainder of the~~ 122
~~voyage takes 20 days. The increased speed option provides for a premium of 0.5 of a Worldscale~~ 123
~~point per knot of increased speed over Base Speed.~~ 124

~~The freight rate for the above voyage would be calculated as follows:~~ 125
~~Voyage Freight Rate = (W40 x 10 days) + (W41* x 20 days)~~ 126

~~30 (total voyage days)~~ 127
~~= W40.67~~ 128
~~(*1 point premium for 12 knots maximum speed)~~ 129

~~Should the Vessel not maintain the speed ordered, due to breakdown or any other reason whatsoever~~ 130
~~beyond Charterers' control, the freight rate shall be calculated based on the average speed actually~~ 131
~~achieved by the Vessel using BP Worldwide Marine Distance Tables to assess the length of the voyage~~ 132
~~between pilot stations at the loading and discharge ports or places.~~ 133

If the Vessel is ordered to lighten pursuant to Clause 4, the freight rate shall, notwithstanding the 134
lightening, be the same Worldscale rate for the voyage as would be payable if no such lightening had taken 135
place. 136

In the case of a ship to ship transfer, as referred to in Clause 4, the freight rate for the voyage shall be the 137
rate as provided in Worldscale for the relevant Trans-shipment Area, as amended at the date of this 138
Charter, or as provided by Worldscale upon application by the parties or either of them. 139

|  |  |  |
|---|---|---|
|  | Notwithstanding the provisions of Clause 3 and the provisions of this Clause should the Vessel load in | 140 |
|  | excess of the quantity specified therein then the freight payable for any overage in excess of such quantity | 141 |
|  | shall be at one half of the freight rate(s) referred to above. | 142 |
| Payment of Freight | 7. Freight shall be payable ~~before breaking bulk~~, ~~immediately after completion of discharge~~, on the gross quantity of cargo loaded by the Vessel as evidenced by the Bills of Lading furnished by the shippers. Payment shall be made in U.S. dollars to . See additional clause 2............................................................................................................................................................................................................................................................................................................................................................................................ less any sum derived from the operation of Clauses 8 and 54 and less any disbursements or advances made to the Master or agents at ports of loading and/or discharge, ~~and additional cargo insurance premium for Owners' account under Clause 42~~, provided that no freight shall be payable on any quantity which submerges, at any stage of the voyage, the marks appropriate under the International Load Line Convention, 1966, or any modification or amendment thereof as may be applicable to the voyage to be performed under this Charter. | 143–155 |
| Cargo Retention | 8. If any material remains in the Vessel's cargo tanks on completion of discharge of cargo Charterers shall be entitled to appoint an independent surveyor to determine what, if any, quantity of such material is cargo which is liquid, pumpable and reachable by the Vessel's pumps. The independent surveyor's findings shall be final and binding on Owners and Charterers. Charterers shall be entitled to deduct from freight an amount equal to the FOB port of loading value of any quantity so determined together with freight due with respect thereto. Charterers hereby agree to indemnify Owners against any liability to a Bill of Lading holder resulting from non-delivery of any such cargo in respect of which a deduction from freight is made provided, however, that Charterers shall in no event be liable to indemnify Owners in an amount greater than the amount of the deduction from freight. | 156–164 |
| Cleaning of Vessel's Tanks, Pumps and Pipelines | 9. Without prejudice to the provisions of Clause 2 Owners shall use due diligence to ensure that the Vessel presents for loading with her tanks, pumps and pipelines properly cleaned to the satisfaction of any inspector appointed by Charterers and ready for loading the cargo specified in Clause 3. Any time used in cleaning tanks, pumps and pipelines to Charterers' inspector's satisfaction shall not count as laytime or demurrage and shall, together with any costs incurred in the foregoing operations, be for Owners' account. | 165–169 |
| Arriving to Even Keel | 10. If for any reason the Vessel is unable to trim to even keel for arrival at a discharge port Owners shall notify Charterers by radio or telex stating the Vessel's expected arrival draught forward and aft in salt water. Such notification shall be given as soon as practicable after the receipt of loading orders and no later than sailing from the loading port or place. | 170–173 |
| Slack Tanks | 11. Notwithstanding the provisions of Clause 7, if Charterers are unable to supply the quantity of cargo specified in Clause 3 the Vessel shall not be required to proceed to sea until such of her tanks are filled as will place her in a seaworthy condition until she is in a seaworthy condition, and freight shall be paid as if the Vessel had been loaded with the quantity of cargo specified in Clause 3. | 174–177 |
| Inert Gas System | 12. ~~Owners undertake that the Vessel is equipped with a fully functional Inert Gas System which is in use on the date hereof and shall so remain during the period of this Charter and that the officers and crew are properly qualified by way of certification for, and experienced in, the operation of such System. Owners further undertake that the Vessel shall arrive at the loading port with her cargo tanks inerted and~~ | 178–181 |

5

|  |  |  |
|---|---|---|
|  | ~~that such tanks shall remain inerted throughout the voyage and the subsequent discharge of the cargo. Any~~ | 182 |
|  | ~~time lost, whether or not the Vessel is on demurrage, owing to deficient or improper operation of the Inert~~ | 183 |
|  | ~~Gas System shall be for Owners' account.~~ | 184 |
|  | ~~The Vessel's Inert Gas System shall fully comply with Regulation 62, Chapter II-2 of the SOLAS~~ | 185 |
|  | ~~Convention 1974 as modified by its Protocol of 1978 and Owners undertake that such System shall be~~ | 186 |
|  | ~~operated by the officers and crew in accordance with the operational procedures set out in the IMO~~ | 187 |
|  | ~~publication entitled 'Inert Gas Systems 1983' as may, from time to time, be amended.~~ | 188 |
|  | ~~If Charterers so require, Owners shall arrange for the Vessel's tanks to be de-inerted to facilitate~~ | 189 |
|  | ~~inspection, gauging and sampling. Any time taken in de-inerting, inspecting, gauging, sampling and re-~~ | 190 |
|  | ~~inerting thereafter shall count as laytime or, if the Vessel is on demurrage, as demurrage.~~ | 191 |
| Crude Oil Washing- Crude Oil sels | ~~13. Owners undertake that the Vessel is equipped with a fully functional Crude Oil Washing System and that the officers and crew are properly qualified by way of certification for, and experienced in, the operation of such System.~~ | 192 193 194 |
|  | ~~Whilst Charterers may instruct the Master to carry out crude oil washing of all tanks which contained~~ | 195 |
|  | ~~cargo the Master shall, in any event, arrange for the crude oil washing of cargo tanks to the MARPOL~~ | 196 |
|  | ~~minimum standards, as set out in the Vessel's Crude Oil Washing Operation and Equipment Manual, at~~ | 197 |
|  | ~~the discharge port or place.~~ | 198 |
|  | ~~For all such crude oil washing the period for discharge specified in Clause 16 shall be increased from 24 to~~ | 199 |
|  | ~~30 hours or pro-rata thereof in the case of a part cargo. Any additional time taken for discharge and crude~~ | 200 |
|  | ~~oil washing shall not count as laytime or, if the Vessel is on demurrage, as demurrage.~~ | 201 |
| Dues and Other Charges | 14. Dues and other charges levied upon the Vessel, howsoever assessed, shall be paid by Owners. Dues and other charges upon the cargo shall be paid by Charterers. | 202 203 |
|  | Notwithstanding the foregoing where, under the provisions of Worldscale, as amended at the date of this Charter, a due or charge is expressly for the account of Owners or Charterers then such due or charge shall be paid in accordance with such provisions. | 204 205 206 |
|  | Should a charge be imposed upon Charterers by the owner of a berth by reason of prolonged occupation of such berth by the Vessel for reasons beyond the control of Charterers or their agents such charge shall be paid by Owners. | 207 208 209 |
| Loading and Discharge of Cargo | 15. The cargo shall be pumped into the Vessel at the expense of and at the risk and peril of Charterers as far as the Vessel's manifold only, and pumped out of the Vessel at the expense of and at the risk and peril of Owners as far as the Vessel's manifold only. | 210 211 212 |
|  | Owners shall, if requested, make available the hands, equipment, and facilities required on board for the connecting and disconnecting of hoses for loading and discharging. The Master may demand shore supervision of, and approval for, the connecting and disconnecting of hoses. Any delay resulting from the failure by Owners to provide the hands, equipment and facilities as aforesaid shall not count as laytime or, if the Vessel is on demurrage, as demurrage. | 213 214 215 216 217 |
| Pumping | 16. Owners undertake that the Vessel shall discharge a full cargo, as defined hereunder, within ~~24 hours~~ 12 hours if Vessel is up to maximum 10,000 metric tons sdwt. | 218 |

6

```
        18 hours if Vessel is 10,001-24,999 metric tons sdwt, and
        24 hours if Vessel is 25,000+ metric tons sdwt
```
, or pro rata thereof in respect of a part cargo, from the commencement of pumping or that the Vessel                      219
shall maintain an ~~minimum~~ average discharge pressure of 100 psig at the Vessel's manifold throughout the period of     220
discharge provided that the shore receiving facilities are capable of accepting discharge of the cargo within             221
such time or at such pressure. The shore receiving facilities shall have the right to gauge discharge pressure            222
at the Vessel's manifold.                                                                                                 223
Any additional time used owing to the inability of the Vessel to discharge the cargo within ~~24 hours or 30 hours~~      224

```
        12 hours if Vessel is up to maximum 10,000 metric tons sdwt,
        18 hours if Vessel is 10,001-24,999 metric tons sdwt, and
        24 hours if Vessel is 25,000+ metric tons sdwt
```
, as the case may be, or such shorter period as may be applicable in the case of a part cargo, or to                      225
maintain an ~~minimum~~ average discharge pressure of 100 psig at the Vessel's manifold throughout the discharge shall    226
be for Owners' account and shall not count as laytime or, if the Vessel is on demurrage, as demurrage. If                 227
the shore receiving terminal facilities are unable to accept discharge of the cargo within the aforemen-                  228
tioned time or at the aforementioned discharge pressure the Master shall present the shore receiving                      229
terminal with a Note of Protest forthwith, and in any event prior to the Vessel's departure from the berth,               230
and shall use all reasonable endeavours to have such Note of Protest countersigned on behalf of the shore                 231
receiving terminal in the absence of which countersignature the Master shall present a further Note of                    232
Protest to the shore receiving terminal.                                                                                  233

For the purpose of this Clause a full cargo shall mean the quantity referred to in Clause 3 or the Bill of                234
Lading quantity, whichever is the greater.                                                                                235

Charterers will not consider any claim by Owners for additional time used in the foregoing circumstances                  236
in the absence of the provision by Owners of the following documentation:-                                                237

(a) an hourly pumping log, signed by a responsible officer of the Vessel and a terminal or Charterers'                    238
representative, showing the pressure maintained at the manifold throughout discharge and, in the absence                  239
of a signature from a terminal or Charterers' representative, a Note of Protest;                                          240

(b) copies of all Notes of Protest issued or received by the Vessel in relation to the discharge in question; and         241

(c) copies of any other documentation generated by the Vessel or by the shore receiving terminal relevant                 242
to the discharge in question.                                                                                             243

**Laydays / Cancelling**    17. Laydays for the purpose of this Charter shall be from 00:01 31st January 2007............. 244
("the Commencement Date") to 23:59 2nd January 2007.................................... ("the Cancelling                  245
Date"). Laytime for the purposes of loading shall not commence before 0600 hours local time on the Com-                   246
mencement Date unless with Charterers' sanction in which event laytime shall commence when the Vessel                     247
commenced loading and should the Vessel not be ready to load by 1600 hours local time on the Cancelling                   248
Date Charterers shall have the option of cancelling this Charter. Should the Vessel, with Charterers'                     249
sanction, have commenced loading prior to the commencement of laytime, as provided above, then the time                   250
~~from such commencement of loading to the commencement of laytime shall constitute additional laytime~~                  251
~~for the purpose of loading and discharging and in respect of the period(s) referred to in Clause 18.~~                  252
used shall be shared equally Charterers/Owners.
If it appears to Charterers that the Vessel will be delayed beyond the Cancelling Date Charterers may                     253
require Owners to notify Charterers of the date on which they expect the Vessel to be ready to load                       254
whereupon Charterers shall have the option to cancel this Charter or agree revised cancelling date and such option        255
shall then be declared

7

|  |  |  |
|---|---|---|
|  | If Owners fail to give such notification when requested by Charterers, Charterers shall have the option to cancel this Charter at any time prior to the arrival of the Vessel. | 260<br>261 |
|  | Cancellation or failure to cancel shall be entirely without prejudice to any claim for damages Charterers may have for the Vessel not being ready to load by the original Cancelling Date stated in this Clause. | 262<br>263 |
| Amount of, and Definition of, Laytime | 18. Charterers shall be allowed 54 hours Saturdays, Sundays and holidays including ~~hours~~, together with any period of additional laytime arising under the provisions of Clause 17 if Charterers sanction loading of the Vessel before the commencement of laydays, as laytime for loading and discharging and in respect of any period(s) when the Vessel, in accordance with Charterers' instructions, is proceeding or operating as referred to in Clauses 4, 5, 12, 21, 24, 25, 26, 29, 30 and 31. Sundays and holidays shall be included in respect of laytime for loading or discharging unless loading or discharging on the Sunday or holiday in question is prohibited by law or regulation at the port or place of loading or discharge and Charterers shall have the right of loading and discharging during the night. | 264<br>265<br>266<br>267<br>268<br>269<br>270<br>271 |
| Commencement and Termination of Laytime/ Demurrage for Loading and Discharge | 19. Subject only to Clauses 17, 20 and 21:-<br><br>(a) laytime or, if the Vessel is on demurrage, demurrage shall at each loading and each discharge port or place commence at the expiry of 6 hours after Notice of Readiness except for ship to ship to load or discharge has been received from the Master or his agents by Charterers or their agents, berth or no berth, or when the Vessel commences to load or discharge at the berth or other loading or discharging place, whichever first occurs. Such Notice of Readiness may be given either by letter, facsimile transmission, telegram, telex, radio or telephone (and if given by radio or telephone shall subsequently be confirmed in writing and if given by facsimile transmission confirmed by telex) but Notice of Readiness shall not be given, without Charterers' sanction, before the commencement of laydays; and<br><br>(b) laytime or, if the Vessel is on demurrage, demurrage shall run until the cargo hoses have been finally disconnected upon termination of loading or discharging, such disconnection to be effected promptly; provided always that if the Vessel is detained for more than ~~2~~ 3 hours beyond the final disconnection of hoses by the shore terminal solely for the completion of cargo documentation and the presentation of such documents on board the vessel ~~due to Charterers' fault~~, laytime or, if the Vessel is on demurrage, demurrage shall re-commence after such period of ~~2~~ 3 hours and terminate upon the completion of cargo documentation. ~~cargo documentation presented onboard the vessel.~~ | 272<br>273<br>274<br>275<br>276<br>277<br>278<br>279<br>280<br>281<br>282<br>283<br>284<br>285<br>286 |
| Suspension of Laytime / Demurrage for Loading and Discharge | 20. Time shall not count against laytime or, if the Vessel is on demurrage, for demurrage when spent or lost: -<br><br>(a) on an inward passage, including awaiting daylight, tide, opening of locks, pilot, or tugs and moving from anchorage, even if lightening has taken place at the anchorage, until the Vessel is securely moored at the berth or other loading or discharging place specified by Charterers;<br>(b) due, whether directly or indirectly, to breakdown, inefficiency or other cause attributable to the Vessel and/or Owners, including inability of the Vessel to pump out the cargo at the rate indicated in Clause 16 after taking account of any variations in back pressure;<br><br>(c) as a result of a labour dispute, or strike, involving Master, officers or crew of the Vessel or tugs or pilot;<br><br>(d) in, or in connection with, the handling of ballast unless this is carried out concurrently with loading or | 287<br>288<br>289<br>290<br>291<br>292<br>293<br>294<br>295<br>296 |

8

|  |  |  |
|---|---|---|
|  | (c) as a result of a labour dispute, or strike, involving Master, officers or crew of the Vessel or tugs or pilot; | 295 |
|  | (d) in, or in connection with, the handling of ballast unless this is carried out concurrently with loading or discharging such that no loss of time is involved; and | 296<br>297 |
|  | (e) in cleaning tanks, pumps and pipelines. | 298 |
|  | (f) awaiting customs, immigration clearance, practique or other local administrative requirement |  |
|  | Nothing herein contained shall be affected by the provisions of Clause 46. | 299 |
| Laytime/<br>Demurrage/<br>Force Majeure | 21. Any delay(s) arising from adverse weather or sea state conditions, fire, explosion, breakdown or failure of equipment, plant or machinery in or about ports or places of loading and/or discharge, Act of God, act of war, labour dispute, strike, riot, civil commotion, or arrest or restraint of princes, rulers or peoples shall, provided always that the cause of the delay(s) was not within the reasonable control of Charterers or Owners or their respective servants or agents, count as one half laytime or, if the Vessel is on demurrage, at one half of the demurrage rate. | 300<br>301<br>302<br>303<br>304<br>305 |
| Demurrage | 22. Charterers shall pay demurrage at the rate of US$ 11,500.00............................ per running day and pro rata for part of a running day for all time that loading and discharging and any other time counting as laytime exceeds the laytime specified in Clause 18. | 306<br>307<br>308 |
| Demurrage<br>Time Bar | 23. Charterers shall be discharged and released from all liability in respect of any claim for demurrage which Owners may have under this Charter unless a claim in writing has been presented to Charterers together with supporting documentation substantiating each and every constituent part of the claim within 90 days of the completion of discharge of the cargo carried hereunder. | 309<br>310<br>311<br>312 |
| Orders for<br>Discharge<br>Ports or Places | 24. If, at any time after the Vessel has completed loading the cargo or part cargo, as the case may be, Charterers instruct the Vessel to await their orders at one or more locations, but maximum 4 days awaiting orders, then all time spent by the Vessel awaiting orders as aforesaid shall count as laytime or, if the Vessel is on demurrage, as demurrage. | 313<br><br>314<br>315 |
| Revised orders | If after any loading or discharge port or place has been nominated Charterers desire to vary such port or place, Owners shall issue such revised instructions as are necessary at any time to give effect to Charterers' revised orders and any period by which the steaming time taken to reach the alternative port or place exceeds the time which should have been taken had the Vessel proceeded thither directly shall count as laytime or, if the Vessel is on demurrage, as demurrage. Charterers shall pay Owners for additional bunkers consumed during such excess time at the replacement price as paid by Owners substantiated by copies of such documents as Charterers may require. | 316<br>317<br>318<br>319<br>320<br>321<br>322 |
| Vessel/Cargo<br>Inspections/<br>Bunker<br>Surveys | 25. Charterers shall be entitled to cause their representative(s) to carry out inspections of the Vessel and/or observe cargo operations and/or ascertain the quantity and quality of the cargo, water and residues on board at any loading and/or discharge port or place.<br>Charterers' representative(s), or any independent surveyor appointed by Charterers, shall be entitled to survey and take samples from any or all of the Vessel's bunker fuel tanks and non-cargo spaces at any loading and/or discharge port or place. | 323<br>324<br>325<br>326<br>327<br>328 |
|  | Any exercise of, or failure to exercise, any of their rights under the foregoing provisions by Charterers shall | 329 |

9

|   |   |   |
|---|---|---|
|   | neither increase nor reduce the respective rights and obligations of the parties under this Charter and shall | 330 |
|   | not be deemed to be, nor construed as, a waiver or acceptance of any default on the part of Owners. | 331 |

Any delay arising solely as a result of any such inspection, survey or sampling as aforesaid shall count as laytime or, if the Vessel is on demurrage, as demurrage. If the Master refuses to permit any such inspection, survey or sampling as aforesaid Charterers shall have the right to procure the removal of the Vessel from the place at which she is lying. All time lost by reason of any such refusal by the Master, including without limitation any time used in shifting the Vessel off, and back to, such, or any other, place shall not count as laytime or, if the Vessel is on demurrage, as demurrage and any expenses incurred as a result of any such refusal, including without limitation Vessel shifting expenses, shall be paid by Owners.

**Cargo Sampling**

26. Charterers shall be entitled to require the Vessel to deviate at any time after leaving any loading port or place and to call at or off a port or place for cargo sampling purposes. Charterers undertake to obtain the consent of the owner(s) of any cargo on board at the time before requiring the Vessel to deviate as aforesaid.

Any delay arising from Charterers' requiring the Vessel to deviate as aforesaid, based upon the period by which the steaming time taken by the Vessel to reach the next port of loading or discharge exceeds the time which should have been taken had the Vessel proceeded thither directly, shall count as laytime, or if the Vessel is on demurrage, as demurrage. Charterers shall pay Owners for additional bunkers consumed during the period of deviation at the replacement price as paid by Owners and substantiated by copies of such documents as Charterers may require and shall pay port expenses incurred by Owners at the port to which Owners were required to divert the Vessel.

**Maintenance of Cargo Temperature**

27. If Charterers so require Owners shall maintain the loaded temperature of the cargo and the Master shall advise Charterers, on a daily basis, of the temperature of such cargo in each of the Vessel's tanks. Notwithstanding the foregoing the Vessel shall not be obliged to maintain the cargo at a temperature in excess of 57deg C (135deg F). Owners warrant that the Vessel is capable of maintaining the cargo up to such maximum temperature throughout the laden voyage and throughout discharge of the cargo. If the Vessel fails to maintain the required temperature Owners shall be responsible for any resulting delay and any time lost thereby shall not count as laytime or, if the Vessel is on demurrage, as demurrage. Should it become necessary for the Vessel to vacate the berth because of Owners' failure to maintain the required temperature all time lost and expenses incurred shall be for Owners' account.

**Cargo Heating**

28. Charterers shall be entitled to require the Vessel to raise the temperature of the cargo above the loaded temperature up to a maximum temperature of 57deg C (135deg F) in all the Vessel's tanks. The Master shall advise Charterers, on a daily basis, of the temperature of the cargo in each of the Vessel's tanks throughout the voyage. Charterers shall reimburse Owners for the cost of additional bunkers used solely to raise the temperature of the cargo as aforesaid, as evidenced by copies of the Vessel's daily Engine Log Book for the complete laden voyage, subject to a limit of 6 tonnes per degree Celsius. Charterers shall pay for such bunkers at the replacement price paid by Owners and substantiated by copies of such documents as Charterers may require.

**Ice on oyage**

29. If on passage to the nominated port or place of loading or discharge the Master finds that the port or place is inaccessible owing to ice he shall immediately request Charterers by radio for revised orders and remain outside the area of ice-bound water. The terms governing such time awaiting orders shall be in accordance with the provisions of Clause 24. Upon receipt of such request Charterers shall give orders for the Vessel to proceed to an alternative ice-free and accessible port or place where there are facilities for receiving or delivering the cargo. In this event freight shall be paid at the rate applicable under this

(line numbers: 332–372)

|  |  |  |
|---|---|---|
|  | Charter to such alternative loading or discharge port or place, and any period by which the steaming time | 373 |
|  | taken to reach such alternative port or place exceeds the time which should have been taken had the Vessel | 374 |
|  | proceeded thither direct shall count as laytime or, if the Vessel is on demurrage, as demurrage. | 375 |
| Ice at Loading/ Discharge Ports or Places | 30. If, on or after the Vessel's arrival at a nominated port or place of loading or discharge, there is a danger of the Vessel being frozen in, the Master shall proceed to the nearest safe and ice-free position and at the same time request Charterers by radio for revised orders. Upon receipt of such request Charterers shall give orders for the Vessel either to proceed to an alternative ice-free and accessible port or place, where there is no danger of the Vessel being frozen in and where there are facilities for receiving or delivering cargo, or to return to and load or discharge at the nominated port or place. If the Vessel is ordered to an alternative port or place the sum in respect of freight and delay to be paid by Charterers shall be as provided in Clause 29, but if the Vessel loads or discharges at the nominated port or place, then, subject to the provisions of Clauses 19, 20 and 21, the whole of the time occupied from the receipt of Notice of Readiness to load or discharge on the Vessel's first arrival until hoses are disconnected after the completion of loading or discharge shall count as laytime, or if the Vessel is on demurrage, as demurrage. Any delay after the final disconnection of shore hoses caused by ice by reason of the Vessel returning to the nominated port or place on Charterers' instructions shall count as laytime or, if the Vessel is on demurrage, as demurrage. | 376 377 378 379 380 381 382 383 384 385 386 387 388 389 |
| Quarantine | 31. Should Charterers require the Vessel to proceed to any port or place at which, at the time the Vessel is ordered to that port or place, there is quarantine time shall count as laytime or, if the Vessel is on demurrage, as demurrage whilst the Vessel is detained, but should quarantine be declared only whilst the Vessel is on passage to the port or place Charterers shall not be liable for any delay caused by such quarantine. | 390 391 392 393 394 |
| Lien | 32. Owners shall have a lien upon the cargo cargo owned by Charterers for all freight, deadfreight, demurrage and the cost of recovery thereof. | 395 396 |
| Document- ation | 33. Owners undertake that throughout the currency of this Charter the Vessel shall comply with clause 1 and shall have on board all | 397 |
|  | such valid documentation as may, from time to time, be required to enable the Vessel to enter and carry out all required operations at loading or discharge ports or places and leave, without let or hindrance, all ports or places to which the Vessel may be directed under the terms of this Charter and Owners hereby expressly confirm: - | 398 399 400 401 |
|  | (a) that they shall be responsible for any loss, damage, delay or expenses; and | 402 |
|  | (b) that time shall not count as laytime or, if the Vessel is on demurrage, as demurrage for any period during which the Vessel is not fully and freely available to Charterers; | 403 404 |
|  | as a result of any breach of this clause or clause 1, or as a result of action taken against her by any Government, Government Organisation, competent | 405 |
|  | authority, person or organisation, owing to her flag, failure to have on board valid documentation as aforesaid or any dispute relating to Owners' wages or crew employment policy or to the condition of the Vessel or her equipment. | 406 407 408 |
| Calls at Sullom Voe | 34. ~~(a) Notwithstanding Clause 45 as from the date of agreement to, and for the duration of, this Charter Owners and their agents shall observe Charterers' instructions regarding the disposal of ballast from the Vessel. For such period as aforesaid Owners shall ensure that no engine room, pumproom or~~ | 409 410 411 |

|   |   |   |
|---|---|---|
|   | ~~other oily effluent is discharged from the Vessel and shall, if required by Charterers, produce evidence of~~ | 412 |
|   | ~~instructions cabled by them to the Master forbidding the discharge of such effluent from the Vessel.~~ | 413 |
|   | ~~Charterers shall pay any deadfreight arising by reason of compliance with Charterers' instructions. If,~~ | 414 |
|   | ~~before the commencement of loading at Sullom Voe Terminal, Charterers produce to Owners evidence of~~ | 415 |
|   | ~~non-compliance with such instructions regarding the disposal of ballast or evidence of the discharge, or~~ | 416 |
|   | ~~apparent discharge, of such effluent Charterers may, by notice in writing, cancel this Charter without~~ | 417 |
|   | ~~incurring any liability for damages.~~ | 418 |

~~b) Owners warrant that the Vessel is capable of accepting cargo at the following minimum acceptance~~ — 419
~~rates and of deballasting within the following maximum periods:~~ — 420

|   |   |   |   |
|---|---|---|---|
| ~~Ship's size~~ | ~~Minimum Cargo Acceptance Rate~~ | ~~Maximum Deballasting Period~~ | 421 / 422 |
| ~~Up to 81,283 tonnes SDWT~~ | ~~7.5 per cent of SDWT/Hour~~ | ~~5 hours 30 minutes.~~ | 423 |
| ~~81,284 tonnes to 162,567 tons SDWT~~ | ~~6.6 per cent of SDWT/Hour~~ | ~~8 hours 40 minutes.~~ | 424 |
| ~~162,568 to 325,134 tonnes SDWT~~ | ~~5.8 per cent of SDWT/Hour~~ | ~~11 hours 10 minutes.~~ | 425 |
| ~~Over 325,135 tonnes SDWT~~ | ~~5.8 per cent of SDWT/Hour~~ | ~~13 hours 00 minutes.~~ | 426 |

~~Should the Vessel's cargo acceptance rate be less than the relevant minimum rate specified above or should~~ — 427
~~the deballasting time specified above exceed the relevant maximum period the excess time required to~~ — 428
~~complete loading shall be deducted from any laytime or demurrage accruing under the provisions of this~~ — 429
~~Charter.~~ — 430

~~(c) Owners warrant that the Vessel shall present manifolds of 16 inch diameter, class ANSI 150 with a~~ — 431
~~minimum 500 mm between flanges or reducer/spool pieces such that the quick closing coupler may operate~~ — 432
~~without restrictions.~~ — 433

**Calls at Nigerian Ports**  35. ~~Owners warrant that the Vessel is neither directly nor indirectly owned and/or chartered by South~~ — 434
~~African, Namibian, Zimbabwean or Israeli companies or persons, that the Vessel is not registered in any of~~ — 435
~~the aforementioned States and that the Vessel is not linked, by means of financial arrangements or~~ — 436
~~mortgages, with such States.~~ — 437

~~Owners warrant that the Master, officers and crew and any supernumeraries or passengers do not, and~~ — 438
~~shall not, include nationals of any of the aforementioned States or persons who were born in, or reside in,~~ — 439
~~any of such States.~~ — 440

~~Owners warrant that the Vessel has not called at or off any port in South Africa, Namibia, or Israel within~~ — 441
~~the last 2 years prior to her arrival in Nigerian waters. A port of call in this context includes calling at or off~~ — 442
~~a port to receive services such as mail and/or provisions whether by helicopter or launch and not merely~~ — 443
~~discharging, loading, repairing or bunkering.~~ — 444

~~Owners warrant that no stores, spare parts, provisions and packing of material on board emanate from any~~ — 445
~~of the States referred to in the first paragraph of this Clause.~~ — 446

**Bills of Lading and Indemnities**  36. Bills of Lading shall be signed as Charterers direct, without prejudice to this Charter. Charterers hereby indemnify Owners - — 447 / 448

(a) against all liabilities that may arise from the signing of Bills of Lading in accordance with the directions of Charterers to the extent that the terms of such Bills of Lading impose more onerous liabilities than those assumed by Owners under the terms of this Charter; and — 449 / 450 / 451

*12*

|   |   |   |
|---|---|---|
|   | (b) against claims brought by holders of Bills of Lading against Owners by reason of any deviation required | 452 |
|   | by Charterers under the provisions of Clauses 24 and 26. | 453 |
|   | Provided, however, that Charterers cannot be held responsible for liabilities arising under the Hamburg Rules where the Hamburg Rules apply compulsorily. |  |
|   | All Bills of Lading issued under this Charter Party shall contain War Risks, Both-to-Blame Collision and New | 454 |
|   | Jason clauses. Any Letter of Indemnity issued by Charterers for non availability of Bills of Lading, or change of destination shall be in Owners' P+I Club wording and signed by a senior officer of the Charterer, no bank guarantee | 455 |
| Unavailability of Bills of Lading Change of Receiver Change of Discharge or Place | If a Bill of Lading is not available at any discharge port or place to which the Vessel may be ordered by | 456 |
|  | Charterers under this Charter or if Charterers require Owners to deliver cargo to a party and/or at a port | 457 |
|  | or place other than as set out in the Bills of Lading, then Owners shall nevertheless discharge the cargo | 458 |
|  | carried by the Vessel in compliance with Charterers' instructions, upon a consignee nominated by | 459 |
|  | Charterers (hereinafter called "the Receiver") presenting reasonable identification to the Master, in | 460 |
|  | consideration of the following undertakings by Charterers:- | 461 |
|  | (i) to indemnify Owners (which term shall, for the purpose of this Clause, include Owners' servants and | 462 |
|  | agents) and to hold Owners harmless in respect of any liability, loss or damage of whatsoever nature which | 463 |
|  | Owners may sustain by reason of delivering the cargo to the Receiver in accordance with Charterers' | 464 |
|  | instructions; | 465 |
|  | (ii) to provide Owners, in the event of any proceedings being commenced against Owners in connection | 466 |
|  | with the delivery of the cargo as aforesaid, from time to time on demand, with sufficient funds to defend the | 467 |
|  | same; | 468 |
|  | (iii) to provide Owners on demand such bail or other security as may be required if, in connection with the | 469 |
|  | delivery of the cargo as aforesaid, the Vessel or any other vessel or property belonging to Owners should be | 470 |
|  | arrested or detained or, if the arrest or detention thereof should be threatened, to prevent such arrest or | 471 |
|  | detention, or to secure the release of such Vessel or property and to indemnify Owners in respect of any | 472 |
|  | loss, damage or expenses caused by such arrest or detention whether or not the same be justified; and | 473 |
|  | (iv) to produce and deliver to Owners all original Bills of Lading in respect of the cargo loaded by the Vessel | 474 |
|  | as soon as same shall have arrived and/or come into the possession of Charterers whereupon Charterers' | 475 |
|  | liability hereunder shall cease. | 476 |
|  | (iv) This indemnity shall become null and void against presentation of 1-3 original Bills of Lading or 13 months after completion of discharge, whichever occurs first, provided within such 13 months no legal proceedings have been instituted against owners |  |
|  | The provisions of the foregoing undertakings shall be governed by English Law. | 477 |
| Coding of Cargo Documentation - US Customs Regulations | 37. If Charterers require the Vessel to load or discharge at a port or ports within the jurisdiction of the | 478 |
|  | US Customs Service, Owners shall procure that the Master complies with Charterers' instructions as to the | 479 |
|  | insertion of Owners' Unique Identifier in each Bill of Lading accompanying a shipment of imported cargo | 480 |
|  | in accordance with US Customs Regulations (19 CFR Parts 4 and 178). Owners shall provide Charterers or | 481 |
|  | their agents on request with details of their Unique Bill of Lading Identifier in respect of any cargo carried | 482 |
|  | hereunder. | 483 |
|  | In the event that the Master fails to comply with Charterers' instruction as aforesaid Owners shall be liable | 484 |
|  | for any delays resulting therefrom and any time lost thereby shall not count as laytime or, if the Vessel is | 485 |

|  |  |  |
|---|---|---|
|  | on demurrage, as demurrage. | 486 |
| Liberty | 38. The Vessel shall have liberty to sail with or without pilots, to tow or go to the assistance of vessels in distress, to call at any port or ports for bunkers, and to deviate for the purpose of saving life or property, or for any other reasonable purpose. | 487<br>488<br>489 |
| Agency | 39. ~~Charterers shall nominate the Vessel's agents at loading and discharge ports or places but such agents shall be employed, instructed and paid by Owners.~~ Charterers' agent at load  Charterers' agent at discharge provided competitive. | 490<br>491 |
| Estimated Times of Arrival | 40. If the Master fails to comply with any of the following provisions any delay, either at a loading or discharge port or place, resulting therefrom shall not count as laytime or, if the Vessel is on demurrage, as demurrage and Owners shall be responsible for any proven additional costs incurred by Charterers arising from such non-compliance. | 492<br>493<br>494<br>495 |
|  | The Master shall send messages by e-mail radio or telex to Charterers addressed '~~BP Shipping London~~' Sun Energy Trading Ltd. and to the agents at the intended loading port or place advising the date and approximate hour of the Vessel's arrival. Such messages shall be sent upon the Vessel's sailing from the prior discharge port and ~~7 days and 72, 48 and 24~~ on a daily basis hours prior to the Vessel's estimated arrival at the loading port or place. Should the Vessel be at sea or elsewhere when ordered by Owners to proceed to the loading port or place the Master shall, if the Vessel is less than 7 days or 72/48/24 hours, as applicable, from the loading port or place, immediately and on a daily basis notify Charterers and the agents of the Vessel's ETA in the manner aforesaid and thereafter notify Charterers and the agents of the Vessel's ETA at such of the times as aforesaid as are applicable or immediately provide Charterers with such other ETAs as Charterers may request. | 496<br>497<br>498<br>499<br>500<br>501<br>502<br>503<br>504 |
|  | The Master shall notify Charterers and the agents of the Vessel's ETA at the discharge port or place in the manner aforesaid also providing information as to the Vessel's expected arrival draught on even keel salt water either upon the Vessel leaving the previous port or place or 72 hours prior to her estimated arrival at the discharge port or place, whichever is the later. Thereafter the Master shall notify Charterers and the agents of the Vessel's ETA together with the information as aforesaid 48 and 24 hours, as applicable, from the discharge port or place or immediately provide Charterers with such other ETAs as Charterers may request. | 505<br>506<br>507<br>508<br>509<br>510<br>511 |
|  | The Master shall advise Charterers and the agents promptly by e-mail radio or telex of any variation of more than 6 hours in estimated dates or times of arrival at the loading and/or discharge port or place. | 512<br>513 |
|  | Should the voyage involve passing the Cape of Good Hope the Master shall, on passing the Cape of Good Hope, send an additional radio or telex message to Charterers, advising the Vessel's ETA off Land's End or at the discharge port or place if already nominated, stating also the estimated arrival draught on even keel salt water. | 514<br>515<br>516<br>517 |
|  | Charterers shall have the right to see copies of all ~~telexes~~ correspondence (showing answerbacks) referred to in this Clause. | 518 |
| Sub-Charter | 41. Charterers may sub-charter the Vessel without prejudice to the respective rights and obligations of either party under this Charter. However Sun Energy Trading Ltd. always to remain fully responsible for the fulfilment of this Charter Party. | 519<br>520 |